IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHELLE L. GRAFTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-1077-M-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Michelle L. Grafton seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that she is disabled due to a variety of ailments, including back surgery and injury, panic attacks, rheumatoid arthritis, chronic obstructive pulmonary disease ("COPD"), chronic vomiting and diarrhea, partial paralysis in her legs, severe pain, chronic dehydration, passing out with no notice when blood pressure dropped quickly, and high blood pressure. *See* Administrative Record [Dkt. Nos. 13 & 14 ("Tr.")] at 191. After her applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on June 23, 2014. *See id.* at 35-93. At the time of the hearing, Plaintiff was 47 years old. *See id.* at 168. She attended community college for two years and has a technical

school certificate in accounting and past work experience as a customer sales representative, data entry clerk, receptionist, office manager, accounting clerk, human resources clerk, and leasing agent. *See id.* at 25-26, 43, 85-86. Plaintiff has not engaged in substantial gainful activity since September 2, 2011. *See id.* at 13.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from degenerative disk disease, inflammatory arthritis, obesity, affective disorder, anxiety, borderline intellectual functioning, and polysubstance abuse, *see id.* at 13, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations, *see id.* at 15. The ALJ further determined that Plaintiff had the residual functional capacity to perform her past relevant work as a human resources clerk, data entry clerk, and receptionist. *See id.* at 25.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two general grounds. Plaintiff contends that, in determining Plaintiff's residual functional capacity ("RFC"), the ALJ failed to consider all of Plaintiff's vocationally significant impairments and failed to properly consider medical opinion evidence.

The undersigned concludes that the hearing decision should reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or supplemental security income, a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage

3

in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the

4

claimant must not be presently working. Second, a claimant must establish that she has an impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that her impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents her from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive

and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

6

## Analysis

Among the arguments Plaintiff makes is a single ground that compels remand – the ALJ failed to use the proper legal standard to evaluate Plaintiff's severe impairments.[1] Plaintiff contends that the ALJ failed to consider all of her vocationally significant impairments, specifically chronic vomiting and diarrhea, somatoform disorder, and borderline intellectual functioning. One of Plaintiff's arguments is that the ALJ committed reversible error by failing to apply the appropriate legal standard, set forth by *Stone v. Heckler*, 752 F.2d 1099, 1102 (5th Cir. 1985), and, as a result, failed to consider the effect of vocationally significant impairments on Plaintiff's RFC.

At Step 2, the ALJ found that Plaintiff has severe impairments of degenerative disc disease, inflammatory arthritis, obesity, affective disorder, anxiety, borderline intellectual functioning, and polysubstance abuse. The ALJ found that Plaintiff does not have severe impairments related to COPD, chronic vomiting and diarrhea, chronic dehydration, and hypertension because these impairments "have not caused more than a minimal effect on the claimant's ability to perform basic work activities and are therefore not severe." Tr. at 13. At Step Four, the ALJ found that Plaintiff has the RFC to occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally stoop, kneel, crouch, and crawl, and frequently balance. The ALJ also found that Plaintiff can understand, remember, and carry out detailed but not complex instructions, make basic decisions, concentrate for extended periods, interact with co-

---

[1] By recommending a remand of this case for further administrative proceedings, the undersigned does not suggest that Plaintiff is or should be found disabled.

7

workers and supervisors, and respond to changes in a routine work setting. *See id.* at 17. Based on this RFC, the ALJ found that Plaintiff was capable of performing her past relevant work as a human resources clerk, data entry clerk, and receptionist. *See id.* at 25.

Plaintiff argues that the ALJ committed a *Stone* error by citing and apparently applying the statutory definition of "severe" – stating that an impairment is severe "if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." Tr. at 11-12 (citing 20 C.F.R. §§ 404.1521 & 416.921; SSR 85-28, 96-3p, & 96-4p).

At Step 2, the primary analysis is whether a claimant's impairment, or combination of impairments, is severe, irrespective of age, education, or work experience. *See Stone*, 752 F.2d at 1100. In *Stone*, the United States Court of Appeals for the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an

express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106. Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *See Hampton*, 785 F.2d at 1311. That is, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard, or that the ALJ's application of the incorrect standard was harmless. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *9 (N.D. Tex. Sept. 4, 2012), *rec. adopted*, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012); *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted,* 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011) (applying harmless error analysis in *Stone* error cases).

In her decision, the ALJ did not refer to *Stone* and instead set forth the severity standard that reflects the regulations set forth by 20 C.F.R. § 416.920(c). *See* Dkt. No. 14-3 at 14. Her language is similar or identical to that at issue in *Lacy v. Colvin*, No. 3:13-cv-1312-BN, 2013 WL 6476381, at *8 (N.D. Tex. Dec. 10, 2013), and *Sanders v. Astrue*, No. 3:07-cv-1827-G-BH, 2008 WL 4211146, at *7 (N.D. Tex. Sept. 12, 2008). In *Sanders*, as in the instant case, the ALJ made no reference to *Stone* but stated that an

9

"impairment or combination of impairments is 'not severe' when medical or other evidence establish only a slight abnormality or combination of slight abnormalities <u>that would have no more than a minimal effect on an individual's ability to work</u>." *Id.* (emphasis in original). The court in *Sanders* reasoned that this language indicated that the impairment could have, "at most, a minimal effect on a claimant's ability to work." *Id.* Because the standard set forth in *Stone* "provides no allowance for a minimal interference on a claimant's ability to work," the language in *Sanders* was not a proper recitation of the severity standard. *Id.*

As in *Sanders*, the standard recited by the ALJ here allows for a minimal effect on the claimant's ability to work. The *Stone* severity standard does not allow for <u>any</u> interference with work ability – even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Morris*, 2012 WL 4468185, at *5. The ALJ therefore erred because he did not actually state the same standard mandated by *Stone*.

In the past, this would be grounds for automatic remand because it constituted a legal error. *See, e.g.*, *Scroggins*, 598 F. Supp. 2d at 806-07; *Sanders*, 2008 WL 4211146, at *8. More recently, however, courts have not automatically remanded such cases. *See, e.g.*, *Lacy*, 2013 WL 6476381, at *8; *Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-*6 (N.D. Tex. June 7, 2013). Rather, the presumption that legal error occurred based on the incorrect wording of the standard may be rebutted by a showing that the correct legal standard was actually applied by

the ALJ, *see Morris*, 2012 WL 4468185, at *9, or that the error was harmless, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Many courts have presumed that the *Stone* error is harmless where the analysis continues beyond Step 2. *See, e.g., Lederman v. Astrue*, 829 F. Supp. 2d 531, 539 (N.D. Tex. 2011).

Here, Plaintiff suggests that the error cannot be harmless because the ALJ did not properly consider certain alleged impairments – chronic vomiting and diarrhea, somatoform disorder, and borderline intellectual functioning – after Step 2 of the Sequential Analysis. That is, according to Plaintiff, the failure to apply the proper *Stone* standard was not harmless because the ALJ did not consider these impairments in Step 4 or Step 5 and possibly found them non-severe based upon the incorrect standard for severity.

The ALJ found that Plaintiff's chronic vomiting and diarrhea were not severe impairments because they had "not caused more than a minimal effect on her ability to perform basic work activities." Tr. at 13. This finding was based on the ALJ's determination that there was no evidence that Plaintiff's chronic vomiting and diarrhea met the 12-month duration requirement. *See id.* at 14; 20 C.F.R. § 404.1509. ("unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

In her narrative, the ALJ stated that Plaintiff complained of diarrhea, abdominal pain, nausea, and vomiting on a number of occasions between 2012 and 2014, including at the emergency room in 2013, and that she was diagnosed at various times with pancreatitis, irritable bowel syndrome, and gastroenteritis. The ALJ also

11

stated that, although Plaintiff's symptoms appeared to recur between 2012 and 2014, many of the physical examinations were essentially normal with respect to her abdomen, aside from occasional abdominal tenderness, and that CT scans of Plaintiff's abdomen in February 2013 and June 2014 did not show any significant abnormality. The ALJ also referred to an August 2014 report by the consultative examiner, Gregory Phillips, M.D. The ALJ considered Dr. Phillips' examination findings that Plaintiff's abdomen was soft and did not have rebound tenderness, although it was mildly tender to direct pressure, and his "problem list" notation that Plaintiff had a history of Crohn's colitis with recurrent abdominal discomfort, but without any acute intraabdominal process. *See id.* at 14, 834-36. In her narrative, the ALJ also stated that Plaintiff at various times denied symptoms such as appetite problems, abdominal pain, diarrhea, and gastrointestinal problems, which suggested that her symptoms were in a stable condition. *See id.* at 14.

But the ALJ failed to consider evidence that Plaintiff's chronic vomiting and diarrhea met the duration requirement. Emergency room records from September 13, 2013 state that Plaintiff had a two- to three-year history of abdominal pain, nausea, and vomiting. *See id.* at 657. And, in the same consultative examiner's report that the ALJ discussed, Dr. Phillips' stated that Plaintiff's subjective complaints seemed to be substantiated by objective data and opined that, "[a]lthough CT scans and radiographs have not shown any acute intraabdominal process, [Plaintiff's] history of inflammatory bowel disease makes it likely that she will be bothered with frequent flare-ups." *See id.* at 14, 836. Contrary to the ALJ's finding, this is some evidence that Plaintiff's

chronic vomiting and diarrhea were severe impairments that would interfere with her ability to work. Thus, it appears the ALJ not only invoked the wrong language but actually used the wrong standard in evaluating those impairments. *See, e.g., Scott v. Comm'r*, No. 3:11-cv-152-BF, 2012 WL 1058120, at *7-*8 (N.D. Tex. Mar. 29, 2012); *Scroggins*, 598 F. Supp. 2d at 805-06; *Sanders*, 2008 WL 4211146, at *7.

The ALJ's failure to apply the correct legal standard was prejudicial. At the hearing, the vocational expert testified that, if an individual had to take unscheduled breaks every two to three hours for up to thirty minutes at a time, or was off task for % or more of the work day, the individual could not work. Thus, if the ALJ had considered Plaintiff's chronic vomiting and diarrhea under the correct legal standard, the result could have been different.

Accordingly, reversal is required on this ground. And, because remand is required for an error at Step 2, the undersigned does not consider Plaintiff's remaining issue for review because the ALJ's application of the correct severity standard on remand may likely affect them.

## Recommendation

The hearing decision is should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

13

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 21, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE